IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE PHOENIX INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. |
| HERLIHY MID CONTINENT COMPANY, JOHNNY A. ROCHA, JENNIFER E. ROCHA and NINA A. HILL AS INDEPENDENT ADMINISTRAOR OF THE ESTATE OF GREGORY TODD HILL, JR. (Deceased) | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, The Phoenix Insurance Company ("Phoenix") and Travelers Property Casualty Company of America (“Travelers”), by and through their undersigned counsel, and for their Complaint for Declaratory Judgment against Defendant, Herlihy Mid Continent Company ("Herlihy"), state as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, seeking a declaration that Phoenix and Travelers have no duty to defend or indemnify Herlihy in connection with the underlying lawsuit styled *Johnny A. Rocha, Jennifer E. Rocha, and Nina A. Hill as Independent Administrator of the Estate of Gregory Todd Hill, Jr., Deceased v. United Parcel Service, Inc., Adrian Caraballo, and Herlihy Mid-Continent Company*, Case No. 2024L003810, in the Circuit Court of Cook County, Illinois (the "Underlying Action").

2. Phoenix and Travelers seek a declaration that coverage under Phoenix and Travelers seek a declaration that coverage under their policies insuring Herlihy is precluded due to Herlihy's material breach of the policies' notice and cooperation conditions in connection with the Underlying Action, which are conditions precedent to coverage under the Policies and Illinois law.

**PARTIES**

3. Plaintiff The Phoenix Insurance Company is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Phoenix is licensed and authorized to conduct the business of insurance in the State of Illinois.

4. Plaintiff Travelers Property Casualty Company of America is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Travelers is licensed and authorized to conduct the business of insurance in the State of Illinois.

5. Defendant Herlihy Mid Continent Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 1306 Marquette Drive, Romeoville, Illinois 60446. Herlihy is engaged in the business of commercial construction, including bridge and road construction and maintenance, within the State of Illinois.

6. Defendant Johnny A. Rocha is an individual and citizen of Illinois and one of the plaintiffs in the Underlying Action.

7. Defendant Jennifer E. Rocha is an individual and citizen of Illinois and one of the plaintiffs in the Underlying Action.

8. Defendant Nina A. Hill is an individual and citizen of Illinois and the Independent Administrator for the Estate of Gregory Todd Hill, Jr., one of the plaintiffs in the Underlying Action.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the plaintiff parties and defendant parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, the Policy provides CGL limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, and the Excess Policy provides Excess Follow-Form per occurrence and aggregate limits of $5,000,000. The plaintiffs in the underlying lawsuit seek damages for severe and permanent and fatal injuries.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) in that Defendant Herlihy is domiciled in this District and a substantial part of the events or omissions giving rise to the claim for coverage occurred in this District, including the accident and Underlying Action.

## FACTUAL ALLEGATIONS

### A. The CGL Policy

11. Herlihy is a named insured under Phoenix's Commercial General Liability Policy No. DT-CO-6P528442-PHX-23, with an effective policy period of March 31, 2023 through March 31, 2024 (the " CGL Policy"). A copy of the CGL Policy is attached hereto as Exhibit A.

12. The CGL Policy provides Commercial General Liability insurance with limits of $1,000,000 Per Occurrence and a $2,000,000 General Aggregate.

13. The CGL Policy's insuring agreement to the "Commercial General Liability Coverage Form" provides in relevant part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I - COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

14. Section IV of the CGL Policy, Commercial General Liability Conditions, sets forth Condition 2, "Duties in the Event of Occurrence, Offense, Claim or Suit," which provides, in relevant part:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a**. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b**. If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

15. Section V of the CGL Policy includes the following relevant "Definitions":

**4.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

****

**17.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to the same general harmful conditions; or

**b.** An act or omission committed in providing or failing to provide first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

****

**25.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

16. The Policy's foregoing notice and cooperation requirements are express conditions precedent to coverage under the CGL Policy.

**B. The Excess Policy**

17. Travelers issued an Excess Follow-Form and Umbrella Liability Insurance Policy No. CUP-6P531065-23-26, for the period of March 31, 2023 through March 31, 2024 (the "Excess Policy"). A copy of the Excess Policy is attached hereto as Exhibit B.

18. The Excess Policy is a follow-form policy providing excess coverage after exhaustion of limits of the scheduled underlying insurance – the CGL Policy – provided the CGL Policy would first apply. The Excess Follow-Form and Umbrella Liability Insurance form to the Excess Policy includes the following relevant coverage provisions:

> **SECTION I – COVERAGES**
> **A. COVERAGE A – EXCESS FOLLOW-FORM LIABILITY**
>
> **1.** We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage **A** of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. If a sublimit is specified in any "underlying insurance", Coverage **A** of this insurance applies to damages that are in excess of that sublimit only if such sublimit is shown for that "underlying insurance" in the Schedule Of Underlying Insurance.
>
> **2.** Coverage **A** of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.
>
> **3.** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**.
>
> **4.** For the purposes of Paragraph **1.** above:
>
> **a.** The applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance will be considered to be reduced or exhausted only by the following payments:
>
> **(1)** Payments of judgments or settlements for damages that are covered by that "underlying insurance". However, if such "underlying insurance" has a policy period which differs from the policy period of this Excess Follow-Form And Umbrella Liability Insurance, any such payments for damages that would not be

covered by this Excess Follow-Form And Umbrella Liability Insurance because of its different policy period will not reduce or exhaust the applicable limit of insurance stated for such "underlying insurance";

**(2)** Payments of "medical expenses" that are covered by that "underlying insurance" and are incurred for "bodily injury" caused by an accident that takes place during the policy period of this Excess Follow-Form And Umbrella Liability Insurance; or

**(3)** Payments of defense expenses that are covered by that "underlying insurance", only if such "underlying insurance" includes such payments within the limits of insurance. However, if such "underlying insurance" has a policy period which differs from the policy period of this Excess Follow Form And Umbrella Liability Insurance, any such payments for defense expenses that would not be covered by this Excess Follow-Form And Umbrella Liability Insurance because of its different policy period will not reduce or exhaust the applicable limit of insurance stated for such "underlying insurance".

If the applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance is actually reduced or exhausted by other payments, Coverage **A** of this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had such limit not been actually reduced or exhausted by such other payments.

19. The Excess Policy's Section V – Conditions, provides in relevant part as follows:

**F. DUTIES REGARDING AN EVENT, OCCURRENCE, CLAIM OR SUIT**

**1.** You must see to it that we are notified as soon as practicable of an "event" or "occurrence" which may result in a claim under this insurance. To the extent possible, notice should include:

**a.** How, when and where the "event" or "occurrence" took place;

**b.** The names and addresses of any persons or organizations sustaining injury, damage or loss, and the names and addresses of any witnesses; and

**c.** The nature and location of any injury or damage arising out of the "event" or "occurrence".

**2.** If a claim is made or "suit" is brought against any insured which may result in a claim under this insurance, you must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**3.** With respect to Coverage **A**, the insured must:

**a.** Cooperate with us in the investigation, settlement or defense of any claim or

"suit";

**b.** Comply with the terms of the "underlying insurance"; and

**c.** Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of the injury, damage or loss for which insurance is provided under this policy or any policy of "underlying insurance".

**C. The Underlying Action**

20. On the evening of March 16, 2024, plaintiffs Johnny A. Rocha ("Rocha") and Gregory Todd Hill, Jr. (deceased) ("Hill"), both employees of Lyons & Pinner Electric Company, Inc. ("Lyons & Pinner"), were performing emergency repair work on a broken traffic light control signal at the northeast corner of the intersection of Route 53 and North Avenue in Lombard, Illinois. See Fourth Amended Complaint filed in the Underlying Action, attached hereto as Exhibit C, at ¶¶2-3.

21. The emergency repair work was being performed pursuant to a contract between the Illinois Department of Transportation ("IDOT") and Herlihy for the "IL 53 Great Western Trail" project, and a subcontract between Herlihy and Lyons & Pinner. See Exhibit C at ¶¶26-27.

22. Rocha and Hill were elevated in a bucket attached to a G50 Elliott Boom Truck Lift positioned at the intersection when they were struck by a tractor-trailer operated by defendant Adrian Caraballo, an employee of United Parcel Service, Inc. ("UPS"). As a result of the collision, Hill was killed and Rocha suffered serious injuries. See Exhibit C at ¶¶ 33, 36.

23. Upon information and belief, plaintiffs in the Underlying Action filed their original complaint against UPS and other defendants on April 9, 2024. Trial in the Underlying Action is presently set for October 13, 2026.

**D. Herlihy's Breach of the Notice and Cooperation Conditions**

24. The accident described herein occurred on March 16, 2024. Herlihy, as the general contractor responsible for traffic signal maintenance and emergency repair at the accident location under its contract with IDOT, knew or should have known of the accident on or shortly after March 16, 2024.

25. On December 23, 2024, Herlihy was subpoenaed to give a deposition in the Underlying Action. A copy of the Subpoena to Herlihy is attached hereto as Exhibit D. By this date, Herlihy indisputably had actual knowledge of the occurrence, the resulting injuries and death, and the pendency of the Underlying Action against UPS. Despite this knowledge, Herlihy did not notify Phoenix of the occurrence or the Underlying Action.

26. On March 25, 2025, Herlihy gave its deposition in the Underlying Action. Herlihy did not notify Phoenix prior to or in connection with this deposition, did not forward any subpoena or other legal papers to Phoenix, and did not seek Phoenix's assistance or participation in connection with the deposition. Phoenix had no knowledge of or opportunity to participate in Herlihy's deposition.

27. On April 8, 2025, CNA, as the insurer of Herlihy's subcontractor Lyons & Pinner, wrote to Herlihy confirming that it would defend Herlihy as an additional insured under its CGL and excess policies on a primary/non-contributory basis. A copy of the letter from CNA is attached hereto as Exhibit E.

28. Despite engaging with CNA regarding its defense, Herlihy still did not notify Phoenix.

29. On July 2, 2025, UPS filed a Third-Party Complaint against Herlihy in the Underlying Action. A copy of the Fourth Amended Third-Party Complaint ("TPC"), adding Herlihy as a third-party defendant is attached hereto as Exhibit F.

30. Herlihy did not forward a copy of the TPC to Phoenix or notify Phoenix that suit had been brought against Herlihy.

31. On July 7, 2025, plaintiffs in the Underlying Action filed their Fourth Amended Complaint, naming Herlihy as a direct defendant. See Exhibit C. The Fourth Amended Complaint asserts claims against Herlihy for the wrongful death, survivorship, and bodily injury premised on Herlihy's alleged negligent failure to provide a safe place to work, to erect proper safeguards, and to properly supervise the emergency repair work at the subject intersection pursuant to its IDOT contract, resulting in the Rocha's injuries and Hills injuries and death on March 16, 2024. *Id*.

32. Herlihy did not forward a copy of the Fourth Amended Complaint to Phoenix or notify Phoenix that the plaintiffs in the Underlying Action also brought suit against Herlihy.

33. On February 6, 2026, Plaintiffs made a settlement demand on Herlihy, and supplemented that demand on February 26, 2026. See Settlement Demand Letter dated June 16, 2026, attached hereto as Exhibit G.

34. Herlihy did not forward a copy of the February 2026 demands to Phoenix or notify Phoenix that the plaintiffs had made these demands on Herlihy.

35. On May 14, 2026, Herlihy first notified Phoenix of the Underlying Action via e-mail. A copy of the e-mail is attached hereto as Exhibit H.

36. Based upon the foregoing, the first and only notice provided to Phoenix by or on behalf of Herlihy occurred on May 14, 2026 -- approximately twenty-six (26) months after the accident, approximately seventeen (17) months after Herlihy was subpoenaed for deposition, and

approximately ten (10) months after Herlihy was named as a direct defendant in the Fourth Amended Complaint in the Underlying Action.

37. As of the date of this Complaint, Herlihy has failed and refused to respond to Phoenix's inquiries regarding whether it is seeking defense and indemnity from Phoenix and Travelers and inquiries for further information about the Underlying Action.

38. Herlihy did not provide notice to Travelers under the Excess Policy of the occurrence and Underlying Action.

39. As a result of Herlihy's breaches of the CGL Policy's and Excess Policy's notice and cooperation conditions, Phoenix and Travelers were deprived of the opportunity to: conduct a timely and thorough investigation of the accident; gather and preserve evidence; evaluate and manage the defense of the Underlying Action from its inception; participate in or prepare Herlihy for its deposition and other depositions; participate in expert discovery; evaluate and participate in settlement discussions; and otherwise protect its interests under the CGL Policy.

## COUNT I
## DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY BASED ON BREACH OF NOTICE OF OCCURRENCE CONDITION

40. Phoenix and Travelers reallege and incorporate by reference the allegations of Paragraphs 1 through 39 as though fully set forth herein.

41. The CGL Policy and Excess Policy require, as a condition precedent to coverage, that Herlihy notify Phoenix and Travelers "as soon as practicable" of an "occurrence" that may result in a claim.

42. The accident constituting the "occurrence" at issue took place on March 16, 2024. Herlihy had actual knowledge of the occurrence no later than December 23, 2024, when it was subpoenaed for deposition in the Underlying Action.

43. Herlihy did not provide any notice to Phoenix of the occurrence until May 14, 2026 -- a delay of approximately twenty-six (26) months from the date of the accident and approximately seventeen (17) months from the date Herlihy was undeniably aware of the occurrence and its potential liability.

44. Herlihy did not provide notice of the occurrence to Travelers in violation of the condition of the Excess Policy.

45. Herlihy's delay and failures in providing notice of the occurrence is unreasonable as a matter of Illinois law, and constitutes a material breach of the notice of occurrence condition precedents under the CGL Policy and Excess Policy.

46. As a direct result of Herlihy's breach of the notice of an occurrence conditions, Phoenix and Travelers are relieved of any and all obligations under the CGL Policy and Excess Policy to defend or indemnify Herlihy in connection with the Underlying Action.

47. An actual controversy exists between Phoenix and Travelers with Herlihy regarding Phoenix's and Travelers' obligations under the CGL Policy and Excess Policy. Phoenix and Travelers are entitled to a declaration that they have no duty to defend or indemnify Herlihy in connection with the Underlying Action based on Herlihy's breach of the notice of an occurrence conditions.

**COUNT II**
**DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY**
**BASED ON BREACH OF NOTICE OF SUIT CONDITION**

48. Phoenix and Travelers reallege and incorporate by reference the allegations of Paragraphs 1 through 39 as though fully set forth herein.

49. The CGL Policy and Excess Policy both require, as an independent condition precedent to coverage, that Herlihy notify Phoenix and Travelers "as soon as practicable" of any

"suit" brought against it, and that Herlihy "immediately send" copies of any summonses or legal papers received in connection with such suit.

50. The Underlying Action qualifies as a "Suit" under the CGL Policy and Excess Policy.

51. On July 2, 2025, UPS filed the TPC against Herlihy. On July 7, 2025, plaintiffs in the Underlying Action filed their Fourth Amended Complaint, naming Herlihy as a direct defendant. Both the TPC and Fourth Amended Complaint constitute "suits" within the meaning of the CGL Policy and the Excess Policy.

52. Herlihy did not provide any notice to Phoenix of either the TPC or Fourth Amended Complaint until May 14, 2026 -- a delay of approximately ten (10) months from the date Herlihy was first named as a direct defendant in the Underlying Action.

53. Herlihy did not provide any notice to Phoenix of the suit until May 14, 2026 -- a delay of approximately twenty-six (26) months from the date of the accident and approximately seventeen (17) months from the date Herlihy was undeniably aware of the occurrence and its potential liability.

54. Herlihy did not provide notice of the suit to Travelers in violation of the condition of the Excess Policy.

55. Herlihy's delay and failures in providing notice of the suit is unreasonable as a matter of law, and constitutes a material breach of the independent notice of suit conditions precedent under the CGL Policy and Excess Policy.

56. As a direct result of Herlihy's breach of the notice of suit conditions, Phoenix and Travelers are independently relieved of any and all obligations under the CGL Policy and Excess Policy to defend or indemnify Herlihy in connection with the Underlying Action.

57. An actual controversy exists between Phoenix and Travelers with Herlihy regarding Phoenix's and Travelers' obligations under the CGL Policy and Excess Policy. Phoenix and Travelers are entitled to a declaration that they have no duty to defend or indemnify Herlihy in connection with the Underlying Action based on Herlihy's breach of the notice of suit conditions.

**COUNT III**
**DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY BASED ON BREACH OF COOPERATION CONDITIONS**

58. Phoenix and Travelers reallege and incorporate by reference the allegations of Paragraphs 1 through 39 as though fully set forth herein.

59. Section IV of the CGL Policy, Commercial General Liability Conditions, sets forth at Condition 2.c. "Duties in the Event of Occurrence, Offense, Claim or Suit require, as conditions of coverage, that Herlihy: (a) immediately send copies of all demands, notices, summonses, and legal papers to Phoenix; (b) authorize Phoenix to obtain records and other information; (c) cooperate with Phoenix in the investigation and settlement of the claim and in the defense of the suit; and (d) assist Phoenix upon request in the enforcement of any rights against persons or organizations that may be liable to the insured.

60. Section F.3 of the Excess Policy requires that Herlihy cooperate with Travelers in the investigation, settlement or defense of any claim or "suit" and comply with the terms of the "underlying insurance."

61. Herlihy materially breached each of these cooperation conditions to the CGL and Excess Policy by: (a) appearing for and completing a deposition in the Underlying Action on March 25, 2025 without notifying Phoenix or Travelers or giving them an opportunity to prepare or participate; (b) failing to timely forward settlement demands; (c) participating in mediation without Phoenix and Travelers' knowledge or involvement; (d) failing to timely forward the

summons, complaint, third-party claim, crossclaim, or any other legal papers to Phoenix; (e) failing to respond to Phoenix's requests to confirm whether Herlihy is seeking defense and indemnity from Phoenix; and (f) failing and refusing to cooperate with Phoenix's investigation of the claim.

62. Herlihy's breaches of the cooperation conditions were material and have substantially prejudiced Phoenix's and Travelers' ability to investigate and defend the Underlying Action, to participate in settlement discussions, and to protect their rights under the applicable policies.

63. As a direct result of Herlihy's material breach of the cooperation conditions, Phoenix and Travelers are independently relieved of any and all obligations under the CGL Policy and Excess Policy to defend or indemnify Herlihy in connection with the Underlying Action.

64. An actual controversy exists between Phoenix and Travelers with Herlihy regarding their obligations under the CGL Policy and Excess Policy. Phoenix and Travelers are entitled to a declaration that they have no duty to defend or indemnify Herlihy in connection with the Underlying Action based on Herlihy's material breach of the cooperation conditions.

**PRAYER FOR RELIEF AS TO COUNTS I-III:**

WHEREFORE, Plaintiffs The Phoenix Insurance Company and Travelers Property Casualty Company of America respectfully request that this Court enter judgment in their favor and against Defendant Herlihy Mid Continent Company as to Counts I-III as follows:

A. A declaration pursuant to 28 U.S.C. § 2201 that Phoenix and Travelers have no duty to defend or indemnify Herlihy in connection with the Underlying Action under Policy No. DT-CO-6P528442-PHX-23 and Excess Follow-Form and Umbrella Liability Policy No. CUP-6P531065-23-26, based on Herlihy's material breach of the Policy's and the Excess Policy's notice of occurrence condition;

B. A declaration pursuant to 28 U.S.C. § 2201 that Phoenix and Travelers have no duty to defend or indemnify Herlihy in connection with the Underlying Action under Policy No. DT-CO-6P528442-PHX-23 and Excess Follow-Form and Umbrella Liability Policy No. CUP-6P531065-23-26, based on Herlihy's material breach of the Policy's and the Excess Policy's independent notice of suit condition;

C. A declaration pursuant to 28 U.S.C. § 2201 that Phoenix and Travelers have no duty to defend or indemnify Herlihy in connection with the Underlying Action under Policy No. DT-CO-6P528442-PHX-23 and Excess Follow-Form and Umbrella Liability Policy No. CUP-6P531065-23-26, based on Herlihy's material breach of the CGL Policy's and the Excess Policy's cooperation conditions;

F. An award of Phoenix's and Travelers' costs incurred in this action; and

G. Such other and further relief as this Court deems just and proper.

Dated: September 22, 2026

Respectfully submitted,

THE PHOENIX INSURANCE COMPANY

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

By: /s/ Jeanne M. Hoffmann

Jeanne M. Hoffmann, One of Their Attorneys
(6201309)
USERY & ASSOCIATES
3010 Highland Pkwy, 4th Floor
Downers Grove, IL 60515

**Mailing Address:**
P.O. Box 2996
Hartford, CT 06104-2996

Direct: 630-961-7046
Main: 917-778-6680
Fax: 844-571-3789
Email: Jhoffma8@travelers.com